**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

**FILED JUNE 1, 2005**

LULA ELEZOVIC,

    Plaintiff-Appellant,

and

JOSEPH ELEZOVIC,

    Plaintiff,

v                                                   No. 125166

FORD MOTOR COMPANY and DANIEL P.
BENNETT,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, C.J.

At issue in this case is (1) whether the Michigan
Civil Rights Act (CRA)[1] provides a cause of action against
an individual agent of an employer and (2) whether
plaintiff's employer, Ford Motor Company, was entitled to a

---

[1] MCL 37.2101 *et seq.*

directed verdict in plaintiff's sexual harassment lawsuit against it.

We hold that an agent may be individually sued under § 37.2202(1)(a)[2] of the CRA. Thus, we overrule *Jager v Nationwide Truck Brokers, Inc*, 252 Mich App 464, 485; 652 NW2d 503 (2002), because it held to the contrary,[3] and reverse the Court of Appeals judgment in favor of Daniel Bennett that followed *Jager*.

We also hold, consistently with the lower courts, that Ford was entitled to a directed verdict. Thus, we affirm the trial court and Court of Appeals judgments in favor of Ford.

## I. Facts and Proceedings Below

Plaintiff filed a lawsuit in November 1999 pursuant to the CRA against Ford Motor Company and Daniel Bennett, a

---

[2] MCL 37.2202(1)(a) provides:

An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

[3] *Jager* had concluded that "a supervisor engaging in activity prohibited by the CRA may not be held individually liable for violating a plaintiff's civil rights." *Id.*

supervisor at Ford's Wixom assembly plant where she worked. As relevant here, her claim was that she had been sexually harassed as a result of a hostile work environment.[4]  The CRA allows such a lawsuit against an employer.[5]

Plaintiff's lawsuit named Bennett as an individual defendant consistently with the then-controlling case of *Jenkins v Southeastern Michigan Chapter, American Red*

---

[4] As set forth in *Radtke v Everett*, 442 Mich 368, 382-383; 501 NW2d 155 (1993), the five elements necessary to establish a prima facie case of sexual harassment based on a hostile work environment are:

(1)  the employee belonged to a protected group;

(2)  the *employee* was subjected to communication or conduct on the basis of sex;

(3)  the *employee* was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to *or* in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5)  respondeat superior. [Emphasis added.]

See also *Chambers v Trettco, Inc*, 463 Mich 297, 311; 614 NW2d 910 (2000).  Respondeat superior liability *exists* when an employer has adequate notice of the harassment and fails to take appropriate corrective action.  *Id.* at 312.

[5]  M Civ JI 105.10, Employment Discrimination—Sexual Harassment.

*Cross*, 141 Mich App 785; 369 NW2d 223 (1985),[6] which held that individual supervisors could be liable under the CRA.[7]

Regarding the specifics in her complaint, plaintiff alleged that, while she was on the job in the summer of 1995, Bennett exposed himself to her while masturbating and requested she perform oral sex. Further, she claimed that after that he repeatedly continued to harass her by grabbing, rubbing, and touching his groin and licking his lips and making sexually related comments.

Before trial, defendants filed a joint motion in limine to exclude from evidence an unrelated, prior criminal misdemeanor conviction of Bennett for indecent exposure. Defendants pointed out that the incident did not occur on Ford property and involved non-Ford employees. Plaintiff, however, argued that the indecent exposure conviction was evidence of a scheme or plan Bennett had of exposing himself to women and that it provided notice to

---

[6] *Jager* overruled *Jenkins* while plaintiff's appeal was pending in the Court of Appeals.

[7] The CRA states that an "employer" includes an "agent" of the employer.

MCL 37.2201(a) provides: "'*Employer*' means a person who has 1 or more employees, and *includes an agent of that person.*" (Emphasis added.)

MCL 37.2103(g), in turn, provides: "'Person' means an individual, agent, association, [or] corporation . . . ."

4

Ford that Bennett engaged in inappropriate sexual acts. The trial court ruled that the indecent exposure conviction was inadmissible with regard to Bennett under MRE 404(b)(1)[8] because it was not offered for any purpose other than to show that he had a propensity to expose himself. The court also held it was inadmissible with regard to Ford pursuant to MRE 403[9] because any probative value would be substantially outweighed by the danger of unfair prejudice.

The case was tried before a jury for three weeks. Plaintiff testified consistently with the allegations in her complaint against Bennett. While it was uncontested

[8] MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

[9] MRE 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

that she had not filed a formal written complaint of sexual harassment pursuant to Ford's antiharassment policy, plaintiff attempted to establish that Ford was otherwise aware, or on notice, of the sexual harassment for several reasons. She claimed that she told two first-line supervisors (friends of hers who were under Bennett in the chain of command) that Bennett had exposed himself to her, but admitted that she had pledged them to secrecy. She also introduced two letters her psychologist had written to the Wixom plant physician, one indicating that in his view plaintiff was descending into mental illness "[d]ue to the harassment she perceived from Mr. Bennett" and a second stating that plaintiff continued "to feel uncomfortable with Dan Bennett." These letters were offered with a third letter from the same psychologist to the Wixom plant manager regarding complaints against a different coworker in which it was said "there has been harassment going on for the past year and a half at her Wixom plant job." Also introduced was testimony from an employee to a Ford Labor Relations Department representative to the effect that the employee would remain on medical leave until someone did something about the situation between plaintiff and Bennett. Finally, reference was made to a letter from plaintiff's attorney (her son-in-law) to the Ford Labor

Relations Department in which he asserted he might take legal action "to insure that our client [plaintiff] is not subjected to working in a hostile environment."

At the close of plaintiff's proofs, defendants filed a joint motion for a directed verdict, arguing that plaintiff had not presented a prima facie case against them.[10] Ford emphasized that plaintiff had not established that it had notice of the alleged sexual harassment by Bennett and, thus, it could not be held liable for any improper acts by him.

The trial court took the joint motion under advisement, with defendants continuing to present their cases to the jury. Bennett testified that he had not sexually harassed the plaintiff and that her claims were false. Ford presented evidence showing that the only time plaintiff had ever filed a sexual harassment complaint was in 1991, involving a UAW committeeman, and that none of the several grievances and complaints plaintiff filed against Bennett had mentioned *sexual* harassment. Rather, with regard to Bennett, her complaints concerned having her shift changed from days to afternoons and disputes

---

[10] MCR 2.515 provides: "A party may move for a directed verdict at the close of the evidence offered by an opponent."

7

regarding overtime.  She also filed a complaint alleging that a female coworker had physically threatened her.

Upon the close of defendants' proofs, the trial court granted directed verdicts to the defendants.  The trial court held that plaintiff had failed to establish a prima facie case of sexual harassment with regard to either defendant and, in particular, found that Ford could not be liable because it had no notice of Bennett's alleged harassment.

Plaintiff, asserting that she had established a prima facie case against Bennett and Ford, appealed to the Court of Appeals.  That Court, however, affirmed the orders of the trial court in a published opinion.[11]  In ruling for Bennett, the majority in *Elezovic* relied on the then-recent holding in *Jager, supra* at 485, that "a supervisor engaging in activity prohibited by the CRA may not be held individually liable for violating a plaintiff's civil rights."  The *Jager* Court had reached its conclusion by relying largely on federal court holdings that under Title VII of the federal civil rights act, the federal analogue

---

[11] *Elezovic v Ford Motor Co,* 259 Mich App 187; 673 NW2d 776 (2003).

to our CRA, there is no individual liability.[12]  While it was obligatory that the majority in *Elezovic* follow *Jager* pursuant to MCR 7.215(J)(1), the majority indicated at the same time that, but for that court rule, it would have reached the opposite result.[13]  It was the majority's view that *Jager* was wrongly decided simply because it was not consistent with the actual language of our CRA, which it concluded made agents individually liable.  Moreover, it believed *Jager* was inconsistent with *Chambers v Trettco, Inc,* 463 Mich 297; 614 NW2d 910 (2000), which it read as recognizing that an individual may be held liable for sexual harassment under the CRA.[14]

---

[12]  The *Jager* panel noted that its conclusion that individuals could not be sued under our CRA was consistent with federal court rulings such as *Wathen v Gen Electric Co*, 115 F3d 400 (CA 6, 1997), in which the Sixth Circuit Court of Appeals determined, consistently with numerous other federal courts of appeals, there was no individual liability under Title VII of the federal civil rights act.

[13]  Under MCR 7.215(J)(1) a panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals.

The judges of the Court of Appeals were polled pursuant to MCR 7.215(J), but a conflict resolution panel was not convened because a majority of the judges opposed convening such a panel.  259 Mich App 801 (2003).

[14]  In making this point, the majority noted that *Chambers* held that certain language in the CRA "'allows
(continued…)

With regard to the directed verdict for Ford, the Court of Appeals rejected plaintiff's claim that her evidence regarding notice had been sufficient to enable her to reach the jury. The Court held that plaintiff's report of Bennett's conduct to her supervisors did not constitute actual notice to Ford because of her request at the same time that this information not be conveyed to their supervisor or other appropriate persons. *Elezovic v Ford Motor Co*, 259 Mich App 187, 194; 673 NW2d 776 (2003). As for the letters that had been sent to Ford, the Court of Appeals concluded that these also did not provide notice because, importantly, none of them referred to *sexual* conduct. The Court held that this fact, when viewed in the context that plaintiff's previous harassment complaints had not been sexual in nature, but were explicitly nonsexual concerning Bennett and others (with the exception of the 1991 complaint against a UAW committeeman that plaintiff did not rely on as part of her case), meant Ford would not reasonably have been put on notice. *Id*. at 195. Finally, the Court also affirmed the trial court's decision to

---

(…continued)
this Court to determine whether the sexual harasser's *employer*, in addition to the sexual harasser *himself*, is to be held responsible for the misconduct.' *Chambers, supra* at 320 (emphasis in original)." *Elezovic, supra* at 201.

exclude evidence regarding Bennett's indecent exposure conviction. It was the Court's conclusion that plaintiff failed to establish that the evidence was offered for a proper purpose because Bennett's act of indecent exposure outside the workplace was not sufficiently similar to sexually harassing an employee in the workplace to establish a common plan, scheme, or system. *Id.* at 206. The Court further concluded that the trial court had not abused its discretion, concerning defendant Ford, in holding that the probative value of this evidence would have been substantially outweighed by the danger of unfair prejudice.[15] *Id.* at 207-208.

Plaintiff applied for leave to appeal in this Court, and we granted leave to appeal and directed the parties to include among the issues briefed whether a supervisor engaging in activity prohibited by the Michigan Civil Rights Act, MCL 37.2101 *et seq.*, may be held individually liable for violating a plaintiff's civil rights. 470 Mich 892 (2004).

---

[15] That is, the marginally probative evidence could be given undue or preemptive weight by the jury.

11

## II. Standards of Review

We review de novo the question whether our CRA authorizes a cause of action against an individual agent for workplace sexual harassment because it is a question of law. *Morales v Auto-Owners Ins Co (After Remand)*, 469 Mich 487, 490; 672 NW2d 849 (2003). In reviewing the statute, if its language is clear, we conclude that the Legislature must have intended the meaning expressed, and the statute is enforced as written. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

We also review de novo a trial court's ruling regarding a motion for a directed verdict, viewing the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003); *Meagher v Wayne State Univ*, 222 Mich App 700, 707-708; 565 NW2d 401 (1997).

Finally, the decision whether to admit or exclude evidence is reviewed for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

## III. Individual Agent Liability Under the CRA

The CRA prohibits an employer from discriminating on account of sex, which includes sexual harassment. MCL 37.2202(1)(a); MCL 37.2103(i) ("Discrimination because of

12

sex includes sexual harassment."). As previously set forth, the statute expressly defines an "employer" as a "person," which is defined under MCL 37.2103(g) to include a corporation, and also states that an "employer" includes an "agent of that person." MCL 37.2201(a).[16]

This statutory language uncontroversially means that Ford Motor Company is an "employer" under the CRA. What is contested is whether an agent of the corporation is also subject to individual liability.

Bennett and Ford have argued that the statutory definition of "employer," which includes an "agent of that person," should not be read as providing individual liability because (1) inclusion of the term "agent" in the statutory definition of "employer" operates solely to confer vicarious liability on the employer, (2) federal courts of appeals have all held that Title VII—the analogous federal sexual discrimination statute with its similar definition of "employer"—does not allow individual liability, and (3) the amendment history of our CRA suggests a different intention on the part of the Legislature.

---

[16] These legislatively provided definitions are binding on this Court. *Tryc v Michigan Veterans' Facility,* 451 Mich 129, 136; 545 NW2d 642 (1996).

13

Regarding the first of these arguments, that this statute should not be read to expand the class of potential defendants to include agents, defendants assert that *Chambers, supra* at 310, supports this narrowing conclusion because it held that the inclusion of an "agent" within the definition of an "employer" in MCL 37.2201(a) served to confer vicarious liability on the agent's employer. We disagree with this analysis. While *Chambers* held that this language establishes vicarious liability, our discussion did not limit it to that function. The reason is that, when a statute says "employer" means "a person who has 1 or more employees, and *includes an agent of that person,*" it must, if the words are going to be read sensibly, mean that the Legislature intended to make the agent tantamount to the employer so that the agent unmistakably is also subject to suit along with the employer. (Emphasis added.) Indeed, when we said in *Chambers, supra* at 320, that categorizing a given pattern of misconduct allows the Court "to determine whether the sexual harasser's *employer*, in addition to the sexual harasser *himself,* is to be held responsible for the misconduct," we believe we said as much. (Emphasis in original.) Accordingly, we reject the argument that including "agent" within the definition of "employer" serves only to provide vicarious liability for the agent's

14

employer and we conclude that it also serves to create individual liability for an employer's agent.[17]

With respect to defendants' second argument, which is effectively that we should piggyback on the rationale federal courts have used with Title VII,[18] defendants refer

---

[17] Justice Weaver states in her dissent that we offer "no clear reason for rejecting the conclusion that the phrase 'agent of the employer' denotes respondeat superior liability." *Post* at 7. But, as our discussion above makes clear, we do *not* reject this conclusion. Rather, we hold that the Legislature's use of the words "agent of the employer" denotes respondeat superior liability and *also* that individual liability may exist under the statute.

Justice Cavanagh argues in his dissent that

> the statute means that an employer is a person who has one or more employees and this includes an agent of the employer. This means that an employer still falls within the purview of the statute even if its "employees" are mere agents, such as family members who are helping with the business. To determine employer liability, agents are considered employees. [*Post* at 2-3.]

We believe Justice Cavanagh is misreading the statute. The statute says an agent can be an employer—not an employee. The reference in the statute to "agent" modifies "employer." It does not expand the scope of "employee." This is evident from the parallel verbs:

> "Employer" *means* a person who has 1 or more employees, and *includes* an agent of that person. [MCL 37.2201(a) (emphasis added).]

[18] Title VII defines "employer" to mean "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and *any agent of such a person . . .*" 42 USC 2000e(b). (Emphasis added.) Thus, while the definition of "employer" under Title VII is similar to that of our CRA, as pointed out in *Chambers,* unlike the federal

(continued…)

15

us to numerous federal decisions that, on the basis of the "policy" and "object" of Title VII rather than what the statute actually says, have read Title VII to preclude individual liability.[19]  This Court has been clear that the policy behind a statute cannot prevail over what the text actually says.  The text must prevail.  In fact, in *Chambers,* when an invitation to follow "policy" over "text" was presented with regard to the CRA, we said:

> We are many times guided in our interpretation of the Michigan Civil Rights Act by federal court interpretations of its

---

(…continued)
law, the CRA expressly establishes a cause of action for sexual harassment and employer liability based on traditional agency principles.  *Chambers, supra* at 311, 315-316, 326.

[19] For example, in *Wathen, supra* at 405*,* the Sixth Circuit Court of Appeals determined there was no individual liability under Title VII of the federal civil rights act, even though a reading of  the language contained in Title VII would lead to the conclusion that an individual could, in fact, be held liable for acts of discrimination.  The Sixth Circuit, however, citing the "object" and "policy" behind Title VII instead of its language, ultimately rendered a decision in conflict with that language. Similarly, in *Tomka v Seiler Corp*, 66 F3d 1295, 1314 (CA 2, 1995), the Second Circuit ruled individual liability was not available under Title VII even though what it grudgingly referred to as "a narrow, literal reading of the agent clause" in Title VII "does imply that an employer's agent is a statutory employer for purposes of [Title VII] liability . . . ."  As in *Wathen,* the Second Circuit went on to read Title VII not on the basis of its language, but on the basis of what it viewed as the real "intentions of the legislators."

16

counterpart federal statute. However, we have generally been careful to make it clear that we are not compelled to follow those federal interpretations. Instead, our primary obligation when interpreting Michigan law is always "to ascertain and give effect to the intent of the Legislature, . . . 'as gathered from the act itself.'" . . . [W]e cannot defer to federal interpretations if doing so would nullify a portion of the Legislature's enactment. [*Chambers, supra* at 313-314 (citations omitted).]

As in *Chambers*, we again decline to follow the tendered "policy" over "text" federal court interpretations of Title VII for the same reason: it would be contrary to the very wording of our CRA. Because MCL 37.2201(a) provides that an "employer" includes an "agent" of the employer, an agent can be held individually liable under the CRA.[20]

---

[20] Justice Weaver states in her dissent that our holding may be a "shallow victory" for plaintiffs because sexual harassers may not be "agents" if they were acting outside the scope of their authority. We neither agree nor disagree with any aspect or premise of this proposition, and do not address it here, because this issue has not been raised or argued by the parties. Further, whether or not some later holding by this Court may prove to be a "shallow victory" is in sharp contrast with the "certain defeat" that plaintiffs in sexual harassment cases against individuals would suffer under Justice Weaver's "common sense" interpretation of the statute. *Post* at 7. Justice Weaver further claims that under our opinion a supervisor, but not a coemployee, may face individual liability. This also is a proposition that has no basis in our opinion. All we have said is, if the individual was an agent of the employer, individual liability may exist. Whether a distinction can be drawn under the statute between
(continued…)

17

Moreover, several federal courts in Michigan have anticipated our holding that, under our CRA, individual agent liability exists even if it did not exist under Title VII.  This can be seen in *Hall v State Farm Ins Co*, 18 F Supp 2d 751, 764 (ED Mich, 1998), in which the United States District Court for the Eastern District of Michigan explained:

> ELCRA [Elliot-Larsen Civil Rights Act] covers any employer "who has 1 or more employees." Mich. Comp. Laws § 37.2201(a).  Thus, ELCRA undeniably envisions placing liability on individuals, such as two-member business entities where one person is the principal and the other person serves as the employee.  Moreover, ELCRA's remedy provision authorizes "person[s] alleging a violation of this act [to] bring a civil action for appropriate injunctive relief or damages, or both," with "damages" being awarded for an "injury or loss caused by each violation of this act, including reasonable attorney's fees." Mich. Comp. Laws §§ 37.2801(1), (3).  These ELCRA remedies further distinguish it from Title VII because damages can be obtained from individuals as well as employers.

Similarly, another judge of the same federal district court also questioned the *Jager* Court's conclusion that individual liability did not exist under Michigan's CRA, stating that

---

(…continued)
supervisory and nonsupervisory employees has again not been raised or argued in this case.

18

the language "includes an agent of that employer," could, under principles of strict statutory construction, well be read as extending liability to individuals. Otherwise, this phrase is merely surplusage, as it adds nothing to the definitional scope of "employer," which itself defines the term "employer" as a person. [*United States v Wayne Co Comm College Dist,* 242 F Supp 2d 497, 507 n 11 (ED Mich, 2003).][21]

We conclude, then, that while federal courts have the power to construe Title VII as they will, that does not compel us to follow them, especially if the language being construed is at loggerheads with the purported policy.

With respect to the third argument regarding the amendment history of our CRA, defendants assert that it precludes a finding of individual liability. They advance this by positing that when the CRA was first enacted in 1976, it defined "employer" to mean "a person who has 4 or more employees, and includes an agent of that person." 1976 PA 453. This meant, as defendants read it, that an agent could not be individually liable because the CRA did

---

[21] *Millner v DTE Energy Co*, 285 F Supp 2d 950, 964 n 16 (ED Mich, 2003), also expressed the same qualms as those indicated in *Wayne Comm College.*

We also note that, in *Poches v Electronic Data Systems Corp*, 266 F Supp 2d 623, 627 (ED Mich, 2003), and *Rymal v Baergen*, 262 Mich App 274, 296-297; 686 NW2d 241 (2004), the courts distinguished *Jager* and allowed retaliation claims against individuals to go forward because the antiretaliation provision of the CRA, MCL 37.2701, is broader than the antidiscrimination provision of the CRA, MCL 37.2202.

19

not apply at all unless there were at least four employees. With that predicate of no agent liability under the 1976 act understood, they then turn to the amended statute, which reflects the 1980 amendment[22] that broadened the protection of the CRA by sweeping under its aegis companies with only one employee, but left unchanged the definition of "employer" to include an "agent," and argue that even though the old theory of nonliability of agents cannot be sustained under the new language, we should read it in anyway. This we cannot do. The Legislature is held to what it said. It is not for us to rework the statute. Our duty is to interpret the statute as written. The binding nature of this responsibility was reiterated by this Court recently in *Lansing Mayor v Pub Service Comm,* 470 Mich 154, 161; 680 NW2d 840 (2004), in which we said:

> Our task, under the Constitution, is the important, but yet limited, duty to read and interpret what the Legislature has actually made the law. We have observed many times in the past that our Legislature is free to make policy choices that, especially in controversial matters, some observers will inevitably think unwise. This dispute over the wisdom of a law, however, cannot give warrant to a court to overrule the people's Legislature.

---

[22] In 1980, the Legislature amended the statute to say that an "employer" means "a person who has 1 or more employees, and includes an agent of that person." 1980 PA 202.

Thus, what this comes down to is that perhaps the Legislature's policy choice can be debated, but the judiciary is not the constitutional venue for such a debate. The Legislature is the proper venue. It is to that body that the defendants should make their argument. Accordingly, we reject the claim that the amendment history of our CRA precludes a finding of individual liability where the actual wording of the statute as currently written unambiguously provides that an agent may be individually liable.[23]

Because we find that (1) inclusion of an "agent" within the definition of the word "employer" is not limited to establishing vicarious liability for the agent's employer, but in fact means agents are considered employers, (2) federal decisions construing Title VII

---

[23] Notwithstanding Justice Weaver's view that the Legislature could have acted in a more "straightforward manner" in communicating its intentions, we cannot think of a more clearcut statement on its part concerning liability under the statute. While Justice Weaver would prefer to rely on her own "common sense," *post* at 7, in interpreting "employer" to exclude from coverage individual employees, the majority would prefer to rely on the statute itself, which states that "[e]mployer . . . includes an agent of that person." It is a caricature of the concept of "judicial restraint" (which concept she invokes on her own behalf, *post* at 7) for Justice Weaver to assert that her "common sense" should be allowed to override the language of the statute.

should not be followed because it would lead to a result contrary to the text of our CRA, and (3) the amendment history of the CRA does not preclude a finding of individual liability, we conclude that liability under our CRA applies to an agent who sexually harasses an employee in the workplace.

## IV. Plaintiff's Claim Against Ford

It is the case in this area of the law that employer responsibility for sexual harassment can be established only if the employer had reasonable notice of the harassment and failed to take appropriate corrective action. *Chambers, supra* at 312. In *Chambers*, we also held that "notice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Id.* at 319. Thus, actual notice to the employer is not required; rather, the test is whether the employer knew or should have known of the harassment. *Radtke, supra* at 396 n 46.[24] As is apparent, the issue is

---

[24] Justice Weaver agrees with the majority that an employer must have notice before it can be liable. *Post* at 10. But, she later arguably undercuts this by citing *Meritor Savings Bank, FSB v Vinson,* 477 US 57, 72; 106 S Ct 2399; 91 L Ed 2d 49 (1986) (a case construing Title VII),
(continued…)

whether Ford knew or reasonably should have known, under the totality of the circumstances, of Bennett's harassment of plaintiff.

Plaintiff claims she made a prima facie showing of notice when she told two low-level supervisors of Bennett's exposure, and that Ford was also put on notice by the letters her psychologist and son-in-law sent to Ford. We agree with the trial court and the Court of Appeals that plaintiff's notice evidence was insufficient to allow the case to be submitted to the jury.

We first consider whether plaintiff's telling two low-level supervisors in confidence that Bennett had exposed himself to her constituted notice to Ford. We find that it did not. It must be recalled that, if an employee is sexually harassed in the workplace, it is that employee's

---

(…continued)

for the proposition that the "absence of notice to an employer does not necessarily insulate that employer from liability." As for this language from *Meritor,* we note that it has been interpreted to mean that "employers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees *knew, or in the exercise of reasonable care should have known.*" *Equal Employment Opportunity Comm v Hacienda Hotel*, 881 F2d 1504, 1515-1516 (CA 9, 1989)(emphasis added). Thus, the language from *Meritor* should be understood to mean *actual* notice is not required. This is consistent with Michigan law because the test is whether the employer knew or should have known of the harassment. *Radtke, supra* at 396 n 46.

choice whether to pursue the matter. In other words, the victim of harassment "owns the right" whether to notify the company and start the process of investigation. Until the employee takes appropriate steps to start the process, it is not started. As stated in *Perry v Harris Chernin, Inc*, 126 F3d 1010, 1014 (CA 7, 1997):

> [T]he law against sexual harassment is not self-enforcing. A plaintiff has no duty under the law to complain about discriminatory harassment, but the employer in a case like this one will not be liable if it had no reason to know about it.

Thus, when an employee requests confidentiality in discussing workplace harassment, and the request for confidentiality is honored, such a request is properly considered a waiver of the right to give notice.[25]

Thus, we conclude that plaintiff's telling two supervisors in confidence about one instance of Bennett's improper conduct does not constitute notice, notwithstanding Ford's policy that required the supervisors

---

[25] An employer, of course, remains free to discipline a supervisor for failing to report a sexual harassment complaint to the proper persons as required by the employer's policy. But, that is a different issue, and it does not mean that a confidential report of sexual harassment to a supervisor constitutes notice to the employer.

to report the information to human resources personnel.[26] Our holding is consistent with other courts that have considered this issue.  For example in *Hooker v Wentz*, 77 F Supp 2d 753, 757-758 (SD W Va, 1999), the court held there was no notice to the employer where the plaintiff confided in her immediate supervisor about sexual advances but asked that he not report it to others.  And, in *Faragher v Boca Raton*, 111 F3d 1530 (CA 11, 1997), rev'd on other grounds 524 US 775 (1998), the court held that, for vicarious-liability purposes, notice to a manager does not constitute notice to management when the complainant asks the manager, as a friend, to keep the information confidential.

With regard to the letters that were sent to Ford, we concur with the Court of Appeals that where the evidence showed that plaintiff had filed numerous grievances and labor relations complaints over the years against Bennett and others that were unrelated to sexual harassment,[27] the mentioning of the word "harassment" alone or the phrase "hostile environment" in the letters was insufficient to

---

[26] Accord *Hooker v Wentz*, 77 F Supp 2d 753, 757-758 (SD W Va, 1999) (where the plaintiff confided in her immediate supervisor about sexual advances, but asked that he not report it to others, there was no notice to the employer).

[27] There were several disputes regarding plaintiff's shift assignment.

give Ford notice that *sexual* harassment was being claimed. This is especially true where plaintiff was aware, and the employer was aware that she was aware, of the terminology at issue because she had previously filed a written complaint asserting that her UAW committeeman had sexually harassed her.[28] Accordingly, even viewing the evidence in a light most favorable to plaintiff, we conclude that Ford was entitled to a directed verdict because, under the totality of the circumstances, a reasonable employer would not have been on notice of a substantial probability that *sexual* harassment was occurring.[29]

Plaintiff argues in the alternative that, even if her evidence of notice to Ford was insufficient, it would have been sufficient if the trial court had not erroneously granted the motion in limine that precluded introduction of evidence of Ford's knowledge of Bennett's indecent exposure conviction. This conviction had been expunged before the

---

[28] Justice Weaver's dissent advocates what might be characterized as a "near miss" theory of notice, i.e., if a male employee had problems at work with female employees or was accused of harassing someone in a nonsexual way, this somehow constitutes notice that such an employee was a sexual harasser. The perils of such an approach are apparent and we decline to adopt it.

[29] A directed verdict is proper where no prima facie showing of liability is made. *Locke v Pachtman*, 446 Mich 216, 222-223; 521 NW2d 786 (1994).

trial in this matter.  We conclude that the trial court's ruling was not an abuse of discretion.

First, we note that MCL 780.623(5) provides:

> Except as provided in subsection (2) [pertaining to certain law enforcement purposes], a person, other than the applicant, who knows or should have known that a conviction was set aside under this section and who divulges, uses, or publishes information concerning a conviction set aside under this section is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $500.00, or both.

Pursuant to this statute, evidence of Bennett's expunged misdemeanor conviction was not admissible.  While this statute clearly made evidence of the conviction inadmissible, that leaves the question whether the facts that led to the conviction, which occurred while Bennett was not at work and involved individuals with no connection to Ford, were admissible to establish that Ford knew or should have known that Bennett was sexually harassing plaintiff.  The trial court ruled that the evidence was inadmissible because the prejudice to Ford would substantially outweigh any probative value the evidence might have.  The trial court did not abuse its discretion.[30]

---

[30] See, e.g., *Tomson v Stephan,* 705 F Supp 530, 536 (D Kan, 1989) (excluding evidence that the defendant made sexual advances outside the employment setting because the advances were not made toward an employee); *Longmire v*
(continued…)

Indeed, we question how Ford's knowledge of Bennett's improper off-site behavior involving nonemployees could constitute notice to Ford that plaintiff's work environment was sexually hostile. Context is important; improper behavior of a given type is not an inevitable predictor of other types of improper behavior especially where, as here, they occur at entirely different locales and under different circumstances. *Tomson v Stephan*, 705 F Supp 530, 536 (D Kan, 1989).

And, as we stated in *Chambers, supra* at 315-316, an employer can be vicariously liable for a hostile work environment only if it "failed to take prompt and adequate remedial action upon reasonable notice of the creation of a hostile *[work] environment* . . . ." (Emphasis added.) Here, the trial court and the Court of Appeals properly held that plaintiff's notice evidence was insufficient to allow the case to be submitted to the jury.

### V. Conclusion

Because employers can be held liable under the CRA, and because agents are considered employers, agents can be

---

(…continued)
*Alabama State Univ*, 151 FRD 414, 417 (MD Ala, 1992) (the defendant's "activities outside the work place are irrelevant" to determining the existence of a hostile work environment).

held liable, as individuals, under the CRA. Thus, we accept the invitation of the Court of Appeals and reverse that part of the Court of Appeals opinion that relied on *Jager* in holding that agents may not be held individually liable under our CRA.

We affirm the judgment of the Court of Appeals that Ford was entitled to a directed verdict and that the trial court's pretrial ruling on the motion in limine was not an abuse of discretion.

Reversed in part, affirmed in part, and remanded to the circuit court for further proceedings regarding Bennett and consistent with this opinion.

> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

29

# STATE OF MICHIGAN

## SUPREME COURT

LULA ELEZOVIC,

    Plaintiff-Appellant,

and

JOSEPH ELEZOVIC,

    Plaintiff,

v                                     No. 125166

FORD MOTOR COMPANY AND DANIEL P.
BENNETT,

    Defendants-Appellees.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I believe that the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, does not provide for individual liability against an agent of an employer; therefore, I respectfully dissent from the majority on this issue. I also dissent from the majority on the issue of notice. As discussed by Justice Weaver in her partial dissent, I likewise believe that plaintiff provided evidence of notice to defendant Ford Motor Company (Ford) that was sufficient to allow the issue to be decided by a jury. Finally, I concur with the result reached by the majority regarding the trial court's

decision to grant defendants' motion in limine to preclude evidence of Ford's knowledge of the alleged sexual harasser's expunged indecent exposure conviction.

I. INDIVIDUAL LIABILITY UNDER THE CIVIL RIGHTS ACT

This issue involves the proper interpretation of the CRA. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). The first step is to review the language of the statute. If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible.

MCL 37.2201(a) states the following: "'Employer' means a person who has 1 or more employees, and includes an agent of that person." According to the statute, "that person" refers to the employer.[1] Simply, the statute means that an employer is a person who has one or more employees and this includes an agent of the employer. This means

---

[1] MCL 37.2103(g) states the following:

> "Person" means an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal or commercial entity.

that an employer still falls within the purview of the statute even if its "employees" are mere agents, such as family members who are helping with the business. To determine employer liability, agents are considered employees. Thus, an employer cannot escape liability because the alleged sexual harasser is not officially an employee, but is instead, for example, a family member who is "helping out" with the business. If the sexual harasser is an employee or agent of the employer, the employer is liable if it had notice and failed to act reasonably. See *Radtke v Everett*, 442 Mich 368, 396; 501 NW2d 155 (1993).

According to the unambiguous language selected by the Legislature, the plain text of the statute provides for employer liability for the acts of its employees and agents, but it does not provide for individual liability. Because policy considerations cannot be taken into account in this case, I offer no position on whether it would be best for plaintiffs in sexual harassment cases to also hold an alleged sexual harasser individually liable under the CRA. That decision is solely for the Legislature to determine.

## II. NOTICE TO FORD OF SEXUAL HARASSMENT

I concur with part II of Justice Weaver's partial dissent. I believe Justice Weaver outlines sufficient evidence to support plaintiff's claim that Ford had notice

3

of plaintiff's allegations of sexual harassment. While plaintiff requested confidentiality from two supervisors whom she told about the alleged sexual harassment, it is critical to note that the supervisor of labor relations had notice of plaintiff's allegations of sexual harassment from one of plaintiff's coworkers and from the *alleged sexual harasser himself*. In addition to the other facts presented by plaintiff, because the supervisor of labor relations had notice of plaintiff's allegations of sexual harassment, I believe that this issue should be determined by a jury.

### III. EXCLUDING EVIDENCE OF THE ALLEGED SEXUAL HARASSER'S EXPUNGED CONVICTION FOR INDECENT EXPOSURE

I concur with the result reached by the majority that the trial court did not abuse its discretion when it granted defendants' motion in limine to preclude evidence of Ford's knowledge of the alleged sexual harasser's expunged indecent exposure conviction. I also concur with the majority's conclusion that, in this case, the facts that led to the conviction were not sufficient to put Ford on notice of sexual harassment. However, I note that there certainly may be instances where the facts of a conviction, even one that occurs off-site and involves nonemployees, may lead to notice because of the context in which the incident occurred and the totality of the circumstances.

## IV. CONCLUSION

Because the CRA does not provide for individual liability against an agent of an employer, I respectfully dissent from the majority on this issue. I also dissent from the majority on the issue of notice and, accordingly, I concur with Justice Weaver because I believe that plaintiff provided evidence of notice to Ford that was sufficient to allow the issue to be decided by a jury. Finally, I concur with the result reached by the majority regarding the trial court's decision to grant defendants' motion in limine to preclude evidence of Ford's knowledge of the alleged sexual harasser's expunged indecent exposure conviction.

> Michael F. Cavanagh
> Marilyn Kelly

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

LULA ELEZOVIC,

    Plaintiff-Appellant,

and

JOSEPH ELEZOVIC,

    Plaintiff,

v                                    No. 125166

FORD MOTOR COMPANY AND DANIEL P.
BENNETT,

    Defendants-Appellees.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur in the majority's conclusions that the trial court's ruling on the defendants' motion in limine was not an abuse of discretion and that its decision to exclude the evidence of defendant Daniel Bennett's expunged conviction should therefore be affirmed. But I write separately because I respectfully dissent both from the majority's conclusion that Michigan's Civil Rights Act (CRA), MCL 37.2101 *et seq.,* provides for individual liability against an agent of an employer and from its conclusion that defendant Ford Motor Company was entitled to a directed

verdict because plaintiff failed to establish that Ford had notice of the sexual harassment.

Instead, I would conclude that the Legislature included the word "agent" in the definition of "employer" in MCL 37.2201(a) to denote respondeat superior liability, not individual liability. Accordingly, I would not overrule *Jager v Nationwide Truck Brokers, Inc,* 252 Mich App 464; 652 NW2d 503 (2002), and I would affirm the Court of Appeals conclusion in this case that there is no individual liability under the statute. Further, I would conclude that plaintiff offered sufficient evidence during trial to allow the question of notice to go to the jury. Therefore, I would reverse the Court of Appeals decision that the trial court properly granted a directed verdict in Ford's favor because plaintiff failed to show that she provided notice of her sexual harassment claim.

I

The CRA provides, in pertinent part, that "[a]n employer shall not do any of the following":

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or

2

applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system. [MCL 37.2202.]

The CRA defines discrimination because of sex to include sexual harassment. MCL 37.2103(i). It defines "sexual harassment" to mean "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions":

(i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

3

The term "employer" is defined as "a person who has 1 or more employees, and includes an agent of that person." MCL 37.2201(a).

The majority concludes that because the definition of the word "employer" includes an "agent" of the employer, "an agent can be held individually liable under the CRA." *Ante* at 17. I disagree and, instead, agree with the conclusion reached by the Court of Appeals in *Jager, supra* at 484, that by defining "employer" to include an "agent" of the employer, the Legislature "meant merely to denote respondeat superior liability[1] rather than individual liability."[2] Thus, I would not overrule the *Jager* decision.

Had the Legislature intended the CRA to impose liability on the individuals who commit harassment, it would likely have done so in a more straightforward manner than by defining "employer" to include an "agent" of the

---

[1] Respondeat superior "means that a master is liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent." Black's Law Dictionary (6th ed). It is an element of a prima facie case of sexual harassment based on hostile work environment. *Radtke v Everett,* 442 Mich 368, 383; 501 NW2d 155 (1993). For all five elements, see p 10 of this opinion.

[2] See also *Miller v Maxwell's Int'l Inc,* 991 F2d 583 (CA 9, 1993), and *Wathen v Gen Electric Co,* 115 F3d 400 (CA 6, 1997), which interpret the phrase as used in Title VII.

4

employer.[3]  Relying on the word "agent" to impose individual liability would, under the majority's interpretation, only allow individual liability against supervisors and others in similar positions who, under agency law, might be considered "agents" of the employer.[4]  But it would not permit coemployees who harass a victim to be held individually liable.  If the Legislature truly intended to impose individual liability under the CRA on those who commit sexual harassment, one would expect that it would choose language that would allow all individuals who commit the harassment to be held liable, regardless of their status as a supervisor or coemployee.

Further, the "round-aboutness" of the majority's approach becomes more evident when one realizes that recognizing individual liability under the CRA may be a very shallow "victory" for plaintiff and may actually result in very few individuals being held liable.  In this

_____

[3] For example, the Legislature could have said in MCL 37.2202 that an "employer *or employee* of the employer shall not . . .," or it could have included a separate section in the statute addressing individual liability.

[4] An agent has been defined as a "person authorized by another (principal) to act for or in place of him; one intrusted with another's business" or "[o]ne who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons."  Black's Law Dictionary (6th ed).

5

case, the majority assumes that Mr. Bennett was an "agent" of Ford without analyzing the issue.  But if the issue whether the perpetrator of the harassment was an agent of the employer were analyzed under strict agency principles, in many cases, it may be concluded that the perpetrator of the harassment cannot be held individually liable as an agent because the perpetrator did not have actual or apparent authority from the employer to harass employees of the employer; therefore he cannot be considered an "agent" of the employer because he was acting outside the scope of his authority.[5]  It does not seem reasonable that the Legislature would create individual liability using language that might, in actuality, foreclose most

---

[5] See, e.g., *AMCO Builders & Developers, Inc v Team Ace Joint Venture,* 469 Mich 90, 103-104; 666 NW2d 623 (2003) (Young, J. concurring)(stating that agency principles are applicable to the attorney-client relationship and that a client may be bound by the acts of his agent when the agent is acting within the scope of his authority); *James v Alberts,* 464 Mich 12, 15; 626 NW2d 158 (2001)(noting that "a principal is bound by an agent's actions within the agent's actual or apparent authority").

In light of this, I now question the correctness of our decision in *Chambers v Trettco, Inc*, 463 Mich 297, 312, 316; 614 NW2d 910 (2000), which concluded that the CRA is firmly "rooted in traditional agency principles."  While agency principles may be a helpful guide in applying the CRA, I question whether they should be rigidly applied in this setting.

individuals from being held individually liable under the CRA.

The majority offers no clear reason for rejecting the conclusion that the phrase "agent of the employer" denotes respondeat superior liability. Rather, it simply concludes that the phrase "includes an agent of that person" must mean "if the words are going to be read sensibly" that agents are subject to individual liability under the statute. *Ante* at 14. Thus, the majority's reasoning amounts to little more than it must mean this because we say it does. But, as suggested above, rather than a "sensible" reading of the statute, this seems a very round-about way to create individual liability.

I also disagree with the majority's suggestion that concluding that the word "agent" denotes respondeat superior liability and not individual liability places "policy" over the "text" of the statute. *Ante* at 15—17. Interpreting the text of the statute does not mean that we read a phrase in the statute in isolation from the act as a whole or from the purpose of the act. Interpreting a statute with judicial restraint and common sense may, in fact, require us to consider the act as a whole and its purpose while we endeavor to understand what the Legislature intended by including a particular phrase.

7

In this case, a purpose of MCL 37.2202 is to prohibit employers from sexually discriminating against employees. By imposing liability on employers for sexual harassment, employers will be encouraged to take steps to prevent sexual harassment from occurring in the workplace. But often in a large company or corporation, there is not one "person" that could be considered the "employer" for purposes of determining whether an "employer" discriminated against an employee. The employer is an entity. Thus, it is reasonable for the Legislature to include in the definition that an "employer" includes an "agent." Including this respondeat superior aspect in the statute ensures that employees can hold employers liable for harassment while still balancing the interests of the employer by limiting employer liability to those who can be considered the employer's "agents" and incorporating respondeat superior principles that require notice to the employer of the alleged harassment.[6]  Considering this "policy" behind the provision does not place policy over "text." Rather, it is another way a judge exercises common

_____

[6] As noted in footnote 3 of this opinion, I question whether agency principles should be rigidly applied to the CRA rather than used as a general guideline for interpreting the CRA, and I do not mean to suggest that by using the word "agent" to denote respondeat superior liability, the Legislature clearly intended to incorporate any and all principles of agency law into the CRA.

sense and judicial restraint while attempting to reach a reasonable interpretation of what the Legislature intended the words to mean.

Therefore, until the Legislature clearly creates individual liability under the statute, I would conclude that plaintiff does not have a cause of action against Mr. Bennett under the CRA.[7]

II

The majority also concludes that the trial court properly granted a directed verdict in favor of defendant Ford Motor Company because plaintiff failed to establish that Ford had notice of the harassment. I disagree and would allow the jury to determine, under the totality of the circumstances, whether Ford had notice of the alleged sexual harassment.

The elements required to establish a prima facie case of sexual harassment based on hostile work environment are:

> (1) the employee belonged to a protected group;
>
> (2) the employee was subjected to communication or conduct on the basis of sex;
>
> (3) the employee was subjected to unwelcome sexual conduct or communication;

---

[7] I note that although I would conclude that plaintiff does not have a claim against Mr. Bennett under the CRA, she can pursue any traditional tort claims that she may have against him.

9

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Radtke v Everett,* 442 Mich 368, 382-383; 501 NW2d 155 (1993).]

As further explained, under the fifth element, an employer may avoid liability if, upon notice of the hostile work environment, it adequately investigated and took prompt remedial action. *Id.* at 396 (quoting *Downer v Detroit Receiving Hosp,* 191 Mich App 232, 234; 477 NW2d 146 [1991]). An employer must have notice of the alleged harassment before it can be held liable, and it does not have a duty to investigate and take prompt remedial action until it has actual or constructive notice. *Radtke, supra* at 396-397 and n 44.

In this case, the trial court granted a directed verdict in Ford's favor on plaintiff's hostile work environment claim on the basis that there was no notice to Ford.[8] The trial court stated:

The fact of the matter is that there was no notice to Ford. This 1998 letter to Mr. Rush, if it went to him, from the son-in-law, the defendant never made mention of any sexual harassment. And again, the only people she told were supervisors. Under normal circumstances I

---

[8] Defendant Ford moved for summary disposition of plaintiff's hostile work environment claim only on the issue of notice.

10

would agree that that would be enough. But in this case it was told to them in confidence. She asked them not to repeat it. And again, she complained that she couldn't come forward because of her culture.

The Court of Appeals affirmed the trial court's ruling.

This Court reviews de novo the grant of a motion for a directed verdict. *Cacevic v Simplimatic Engineering Co (On Remand),* 248 Mich App 670, 679; 645 NW2d 287 (2001); see also *Craig v Oakwood Hosp,* 471 Mich 67, 77; 684 NW2d 296 (2004) (stating that a decision on a motion for judgment notwithstanding the verdict is reviewed de novo). In reviewing the trial court's decision on the motion, "we examine the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party." *Hord v Environmental Research Institute of Michigan (After Remand),* 463 Mich 399, 410; 617 NW2d 543 (2000). "A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Cacevic, supra* at 679-680; see also *Wilkinson v Lee,* 463 Mich 388, 391; 617 NW2d 305 (2000) (stating that a directed verdict is appropriate only if the evidence, when considered in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law). Thus, while not insurmountable, the threshold for obtaining a directed verdict is high. *Hord, supra* at 410.

11

In my opinion, considering all the evidence and the reasonable inferences that may be drawn from it, there are factual questions about which reasonable jurors could differ regarding whether Ford had notice. Therefore, the issue of notice is not one that the trial court can properly decide as a matter of law; instead, it is a question of fact to be decided by the jury. Consequently, I would reverse the Court of Appeals affirmance of the trial court's grant of a directed verdict in Ford's favor and remand this case to the trial court.

Plaintiff testified that in 1995, she told her supervisor, Gary Zuback, that Mr. Bennett had been sexually harassing her. She also testified that around the same time, she told another supervisor, Butch Vaubel, who said that he would talk to Mr. Bennett, and that on different occasions, she told her coworkers Dan Welch, Dave Perry, and Brad Goatee. She admitted that when she told Mr. Zuback and Mr. Vaubel, she told them confidentially. Dan Welch testified that he did not tell anyone about the first incident of harassment that plaintiff described to him, but that he later spoke to Jerome Rush, the supervisor of labor relations, in October 1998, as well as Ron Mester and perhaps Richard Greenfield about the situation. Mr. Goatee testified that he was called down to labor relations in 1996 or 1997 to discuss Mr. Bennett. Mr. Rush testified

that before plaintiff's lawsuit was filed, Mr. Bennett told him that plaintiff was trying to set Mr. Bennett up on a sexual harassment claim and that Ford, therefore, knew about the lawsuit before it was filed.

Labor relations notes written by Pete Foley to Jerome Rush on August 25, 1998, indicate that plaintiff was very upset and felt that Mr. Bennett and another worker, Tammy Holcomb, were looking at her and laughing. Notes dated August 28, 1998, state the plaintiff told Pete Foley that Mr. Bennett came near her when no one was around and that she was scared. Notes from Jerome Rush dated September 30, 1998, stated that plaintiff told him that Mr. Bennett was "harassing" her.

Letters from plaintiff's treating psychologist, Fran Parker, on September 19, 1997, and November 10, 1997, reference plaintiff's discomfort with Mr. Bennett, A letter sent by plaintiff's son-in-law, Paul Lulgjuraj, who is an attorney, on April 9, 1998, to Mr. Rush states that his office was investigating "ongoing acts of discrimination and retaliation," references threats made by Tammy Holcomb, and advises that his office may be taking actions "to insure that our client is not subjected to working in a hostile environment." On December 17, 1998, Dr. Parker wrote to Mr. Rush to explain that Rush had misunderstood Parker's phone call on October 6, 1998, to

Rush to tell Rush that plaintiff had homicidal and suicidal thoughts. Parker's letter stated that Parker did not tell Mr. Rush that plaintiff intended to kill Dan Bennett, but that the call was meant to ask Mr. Rush to intervene on plaintiff's behalf because the stress of plaintiff's job was "breaking her down."

The majority, in affirming the trial court's grant of a directed verdict in Ford's favor, improperly creates a rule of automatic waiver. Under the majority's analysis, any time an employee requests confidentiality when reporting sexual harassment, the employee will have waived notice. *Ante* at 23-24. While a request of confidentiality is certainly something that the jury should consider in determining whether the employer had notice, such a request should not constitute an automatic waiver of notice. Rather, all the evidence presented and the totality of the circumstances must be considered when determining whether the employer had actual or constructive notice. See, e.g., *Meritor Savings Bank, FSB v Vinson,* 477 US 57, 72; 106 S Ct 2399; 91 L Ed 2d 49 (1986), where in rejecting a rule of automatic liability for employers for sexual harassment by supervisors, the United States Supreme Court also stated that the "absence of notice to an employer does not necessarily insulate that employer from liability."

14

Considering all the evidence presented in this case in the light most favorable to the plaintiff, there are issues of fact to be decided by the jury about whether defendant Ford Motor Company had notice that plaintiff was being sexually harassed. While it is true that plaintiff may have requested confidentiality from her supervisors and that many of the letters and documents mentioning "harassment" generally do not detail the specific instances of sexual harassment on which plaintiff's lawsuit is based, evidence was also presented that she told coworkers of the harassment and that the coworkers in turn spoke with employees in the labor relations department. Further, considering all the documentation in the light most favorable to plaintiff, there is certainly evidence that plaintiff complained to Ford that Mr. Bennett was "harassing" her and doing something to make her job very stressful.

Therefore, I would conclude that the question of notice is not one that can be decided as a matter of law by the trial court, but one that must be decided by the jury after it considers the entire record and weighs the conflicting evidence.

Elizabeth A. Weaver

15