NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0705n.06
Filed: October 3, 2007

No. 06-2485

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **RORY MAZUR,** | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **WAL-MART STORES, INC., DBA WAL-MART** | ) | O P I N I O N |
| **SUPERCENTER STORE # 1432**, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    GUY, ROGERS, McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Plaintiff Rory Mazur worked in the maintenance department of defendant Wal-Mart's store in Cadillac, Michigan.  After Wal-Mart terminated his employment, he filed a complaint asserting employment discrimination and hostile work environment claims under Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA"), M.C.L. §§ 37.1101, *et. seq*.  The district court granted summary judgment in favor of Wal-Mart determining that Mazur had not established a genuine issue of material fact as to whether he was subjected to employment discrimination or a hostile work environment.  On appeal, Mazur argues the district court erred by granting summary judgment in favor of Wal-Mart.  Upon review of the record and the applicable law, we affirm.

## I. BACKGROUND

Rory Mazur sustained a closed-head injury in 1984. As a result, he suffered from epilepsy and his speech was impaired. Prior to the injury, Mazur also had an uncorrectable eye condition that impaired his distance vision, limited his reading ability, and rendered him unable to drive.

Mazur initially began working for Wal-Mart in Oceanside, California, in 1999. In 2001, he moved to Michigan, and he was transferred to the Cadillac, Michigan Wal-Mart store. When he accepted a shift change to the night maintenance crew, he began experiencing problems at work.

Mazur's job duties included cleaning the bathrooms, crushing recyclable cans, taking out the trash, and vacuuming and shampooing the carpeted floors. Mazur testified in his deposition that he was assigned to clean the toilets every day that he worked, and that no one else on the night maintenance crew was assigned to that duty when he was working. When Mazur told his supervisor, Mark Hamacher, that he wanted to operate the scrubber and buffer machines, Hamacher told him to ask Kathy Eldridge, the store manager. Eldridge told Mazur that he could not use the floor scrubber or buffer "at this time." Mazur testified in his deposition that a fellow employee later told him that management had decided he should not use the scrubber or buffer because he was epileptic.

Mazur also testified in his deposition that other workers were ridiculing him on account of his disability, and would laugh at him when he passed by. He believed that fellow employees daily would throw his coat, which he had hung up, on the floor in order to provoke him. In December 2003, Hamacher posted a notice advising that employee possessions that were not properly stored would be donated to Goodwill. Mazur interpreted this as an escalation of the provocation intended

by throwing his coat on the floor. He told Hamacher, "Don't be touching my stuff." Hamacher explained that Mazur additionally threatened to hurt him if he touched Mazur's possessions.

Three weeks after this incident with Hamacher, Eldridge met with Mazur to discuss the incident. Mazur explained that at the end of the meeting, Eldridge told him that he was being terminated for threatening Hamacher. However, Mazur called the corporate office the next day and was told to return to work and report to Eldridge on the following day. When Mazur returned to work, Eldridge, along with others, explained to Mazur that he was on probation, and that he was receiving his last chance before he was terminated.

On March 9, 2004, Mazur was attempting to fix a backed-up toilet and took a drain cleaner off the store shelves, without first asking permission from management.[1] When the assistant store supervisor discovered this, she told him to go home. Mazur was terminated the same day; the exit interview form identified the reason as "Gross Misconduct—Integrity Issue (Theft, Violent Act, Dishonesty, Misappropriation of Company Assets)."

On April 25, 2005, Mazur filed a complaint in state court claiming that both the conditions of his employment and his termination were motivated by unlawful discrimination, and that he was subjected to a hostile work environment. Wal-Mart removed the action to federal court on the basis of diversity jurisdiction. Following discovery, Wal-Mart moved for summary judgment as to both claims. The district court granted Wal-Mart's motion for summary judgment determining that Mazur

---

[1]Prior to being put on probationary status, on at least one previous occasion, Mazur had used a customer product to perform his maintenance duties instead of using a product in the store's cleaning supplies, and had been reprimanded by a supervisor.

had not established a genuine issue of material fact as to whether he was subjected to employment discrimination or a hostile work environment. Mazur now appeals the grant of summary judgment.

## II. ANALYSIS

"This Court reviews the district court's decision on a motion for summary judgment *de novo*." *Max Arnold & Sons LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 498 (6th Cir. 2006) (citing *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005)). "The Court must view the facts and all of the inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.* at 499 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A. Disparate treatment claims

The elements of a *prima facie* case of employment discrimination under Michigan law are "that (1) [the plaintiff] is handicapped as defined by the [statute], (2) the handicap is unrelated to his ability to perform the duties of his job, and (3) he was discriminated against in one of the ways described in the statute." *Michalski v. Bar-Levav*, 625 N.W.2d 754, 759 (Mich. 2001). The PWDCRA provides that "an employer shall not . . . [d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability . . . that is unrelated to the individual's ability to perform the duties of a particular job or position," and that the employer shall not "[l]imit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of

employment opportunities or otherwise adversely affects the status of an employee." M.C.L. § 37.1202(1)(b), (c).

If the plaintiff establishes a *prima facie* case,

the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination.

*Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003) (citations omitted) (addressing claim of pregnancy discrimination); *see also Hall v. McRea Corp.*, 605 N.W.2d 354, 359 (Mich. Ct. App. 1999) (holding that burden-shifting analysis applies to handicap discrimination as well). The plaintiff's rebuttal of the employer's legitimate, non-discriminatory reason "'defeats summary disposition'" only if the "'plaintiff [does] not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for . . . [unlawful] discrimination.'" *Hall*, 605 N.W.2d at 359 (quoting *Lytle v. Malady (On Rhrg.)*, 458 Mich. 153, 175-76 (1998)).

### 1. Employment Conditions

The dispute in this case primarily concerns the third element of the *prima facie* case, namely, whether Mazur "was discriminated against in one of the ways described in the statute."[2] *Michalski*, 625 N.W.2d at 759. Mazur claims that Wal-Mart took discriminatory adverse employment actions

---

[2]Although Wal-Mart expressly refuses to concede that Mazur has established the first two elements, the district court found in favor of Mazur as to those elements, and Wal-Mart makes no challenge to those findings in its brief.

against him when (a) he was not allowed to use the scrubber or buffer and (b) he was assigned to clean the bathrooms each time that he worked.

The Michigan Court of Appeals has explained that

[a]lthough there is no exhaustive list of adverse employment actions, typically [they] take[] the form of an ultimate employment decision, such as "a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Pena v. Ingham County Rd. Comm'n*, 660 N.W.2d 351, 358-59 (Mich. Ct. App. 2003) (citations omitted) (quoting *White v. Burlington N. & Santa Fe Co.*, 310 F.3d 443, 450 (6th Cir. 2002)).

Here, Mazur's responsibility to clean the bathrooms and the fact that he was not permitted to use the scrubber or buffer did not affect his income, benefits, or title. While the fact that Mazur was consistently required to clean the bathrooms might understandably displease him, it did not result in a material adverse change in the terms of his employment. Moreover, that some of Mazur's coworkers dubbed him "Tidy Bowl man" is the sort of social ostracism that does not constitute an adverse employment action. *See Heckmann v. Detroit Chief of Police*, 705 N.W.2d 689, 697 (Mich. Ct. App. 2005) (holding that "being socially isolated in the office" did not constitute an adverse employment action as a matter of law), *overruled in part on other grounds*, *Brown v. Mayor of Detroit*, Nos. 132-016, 132-017, 2007 Mich. LEXIS 1571, at *7 n.2 (Mich. July 11, 2007). Accordingly, Mazur has not adduced facts sufficient to establish that he suffered from adverse employment actions as a result of his work conditions. *See Christian v. Mich. Dep't of Corrections*, No. 268-856, 2007 Mich. App. LEXIS 431, *14 (Mich. Ct. App. Feb. 20, 2007) (holding that the

plaintiff "has not established a tangible employment action because occasional rotation to less desirable assignments within her job category is not 'an ultimate employment decision'").

Even if Wal-Mart's assignment of Mazur to clean the bathrooms and not to use the scrubber and buffer machines were deemed adverse employment actions, and Mazur provided facts sufficient to establish a *prima facie* case, Mazur has not rebutted Wal-Mart's legitimate, non-discriminatory reasons for its actions. Mazur does not dispute that even before Hamacher became supervisor, two members of the crew, both of whom were former supervisors, always operated the scrubber and buffer, while Mazur always cleaned the bathrooms. Hamacher testified in his deposition that when he became supervisor of the night maintenance crew, he assigned the scrubber and the buffer to the crew members who "had more experience with the equipment." J.A. at 197. Hamacher explained that he "used people at their strengths," and Mazur's strength "was making sure that the carpets were cleaned and restroom maintenance." J.A. at 198. As the district court pointed out, Mazur himself stated that even a former supervisor could not "do seven bathrooms and clean all the carpets and do the [recyclable] cans in one day, but I did it." J.A. at 73.

When Mazur asked to operate the scrubber and buffer, Hamacher directed him to take his complaint to Eldridge, who told him that he could not operate that equipment "at this time." J.A. at 54, 197. Mazur argues that Eldridge's answer is pretextual. Eldridge testified in her deposition that the reason she told Mazur that he could not operate the scrubber and buffer was that she "did not feel that with his carelessness, his lack of following the direction [*sic*] that he should operate the equipment." J.A. at 119. By alluding to Mazur's carelessness, Eldridge was referring to several problems with Mazur's performance, i.e., that a vacuum cleaner was found badly damaged after he

had used it on one shift; that Mazur moved too fast pulling pallets and would cause collisions; that Mazur damaged toilet paper dispensers by prying them open rather than using a key, despite having been told not to; that Mazur hurt his back while lifting an item; and that he also injured himself on a separate occasion, bruising his lip and cracking his dentures.

Accordingly, Mazur has not rebutted Wal-Mart's legitimate, non-discriminatory reason for assigning the other two crew members to the scrubber and buffer and him to clean the bathrooms: namely, that those two employees were more proficient at operating that equipment while he was more proficient at cleaning the bathrooms, and that they had been doing so since before Hamacher became supervisor. Nor has he shown that Wal-Mart's stated reason was not the real reason for his assignment. The district court therefore properly granted summary judgment in favor of Wal-Mart on plaintiff's claim that his job responsibilities were discriminatorily assigned.

### 2. Termination

Mazur's claim that his termination was the product of discrimination similarly fails. While termination is unquestionably an adverse employment action, even if Mazur were deemed to have established a *prima facie* case, he has not rebutted Wal-Mart's legitimate, non-discriminatory reason for his termination.

Mazur himself admitted that Wal-Mart had a policy forbidding employees to use customer products without the prior permission of a supervisor; that he was placed on probation on January 21, 2004; and that on March 29, 2004, his last day of work, he again took a customer product for use in repairing an overflowing toilet without first asking permission. When a supervisor discovered that he had taken the customer product, Mazur was terminated.

- 8 -

As expected, Mazur and Wal-Mart describe the context of his termination somewhat differently. Mazur asserts that his use of a customer product "was solely to benefit Wal-Mart," while Wal-Mart asserts that Mazur had a history of using customer products to perform his job duties even when comparable employee supplies were available, thus violating store policy, because he preferred the customer products.[3] Wal-Mart characterizes this behavior as part of a pattern of wilful and argumentative conduct on Mazur's part.

Mazur concedes that his probation was his "last chance" and that the form filled out in conjunction with his probation stated that the "next level of action if behavior continues" is termination. J.A. at 66, 398. Wal-Mart thus offered a legitimate, non-discriminatory reason for Mazur's termination: he violated a workplace policy while he was on last-chance probation.

In order to survive summary judgment, Mazur must show that Wal-Mart's reason was not only pretextual, but was in fact a pretext for illegal discrimination. In this vein, Mazur argues that Sandra Bell, another Wal-Mart employee, was not terminated despite the fact that she also used customer products.

Mazur relies on evidence that similarly situated employees, or comparables, were more favorably treated than he was, a mainstay method of demonstrating employment discrimination. *See, e.g.*, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The Michigan Court of Appeals has adopted the comparables analysis in resolving workplace discrimination claims. *See Reisman v. Regents of Wayne State Univ.,* 470 N.W.2d 678, 685 (Mich. Ct. App. 1991)

---

[3]Mazur does not dispute that on a prior occasion, a product designated for employee use was available, but he used a customer product because he preferred it.

(stating a plaintiff can show disparate treatment if he "was a member of the class entitled to protection under the act and that he was treated differently than persons of a different class for the same or similar conduct"); *Hall*, 605 N.W.2d at 360 (noting plaintiff's failure to provide evidence of disparate treatment that other employees, with similar performance deficiencies, did not receive same treatment as plaintiff); *Wingate v. County of Genesee*, No. 175-590, 1996 Mich. App. LEXIS 1422, at *4-5 (Mich. Ct. App. Aug. 13, 1996) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). Under the comparables theory,

> the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances [as] would distinguish their conduct or the employer's treatment of them for it.

*Ercegovich*, 154 F.3d at 352 (quoting *Mitchell*, 964 F.2d at 583) (internal quotations omitted). "These factors generally are all relevant considerations in cases alleging differential disciplinary action." *Id*. at 352-53 (emphasizing that the plaintiff must demonstrate that he is similarly situated to the non-protected employee "in all *relevant* respects," not in "every single aspect of their employment").

Mazur's argument fails because Bell is not a similarly situated or comparable employee to Mazur. Most importantly, Bell was not subject to the same standards because while Mazur was on probation[4] when he was terminated for using a customer product without permission, Bell was not.

---

[4] Mazur disputes the circumstances that led to his probation. Even if Mazur's version of events is accurate, however, Wal-Mart's legitimate, non-discriminatory reason is not undermined. Whether Hamacher's version of the incident that led to Mazur's probation (i.e., Mazur's disagreement with Hamacher and related threat against him) was wholly accurate is irrelevant to the question of whether Wal-Mart's assertion that Mazur was on probation has a basis in fact. Mazur does not allege that Hamacher invented the incident in order to cause Mazur to be put on probation,

Indeed, Mazur does not even argue that any employee who used a customer product without permission while on probation was *not* terminated.

Thus, Mazur has not demonstrated that Wal-Mart's legitimate, non-discriminatory reason for terminating him is not based in fact: he did violate Wal-Mart's store product use policy while on disciplinary probation. Nor has he shown that Wal-Mart's stated reason was not the real reason for his termination. The district court's grant of summary judgment as to Mazur's discriminatory termination claim was therefore proper.

**B. Hostile work environment claim**

The elements of a claim for hostile work environment are (1) "the employee belonged to a protected group"; (2) "the employee was subjected to communication or conduct on the basis of" the protected status; (3) the conduct was unwelcome; (4) "the unwelcome . . . conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment"; and (5) respondeat superior. *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 853 n. 4 (Mich. 2005) (setting forth hostile environment test for sexual harassment cases); *see also Downey v. Charlevoix County Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998) (applying these elements in a case involving handicap discrimination).

In order to establish a hostile work environment, courts ask "whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile,

---

much less that Eldridge placed Mazur on probation for an incident she knew did not happen; nor does the record provide support for such a claim.

or offensive employment environment." *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 320 (Mich. 1996) (quoting *Radtke v. Everett*, 501 N.W.2d 155, 167 (Mich. 1993)). Courts must examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hussain v. Highgate Hotels, Inc.*, 126 F. App'x 256, 268 (6th Cir. 2005) (applying Michigan law and quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). "'Simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not rise to that level." *Id.* (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998)).

Mazur alleges that Hamacher and possibly another employee called him "Tidy Bowl man"; that other employees would laugh at him as he was leaving the break room and one said, "There he goes"; and that other employees would throw his coat on the floor daily.[5] Bell also testified in her deposition that other employees would tease Mazur by "asking him more than two or three questions at once and constantly saying, 'What did you say? Are you going to answer me?'" J.A. at 413.

Mazur's allegations fall short of conduct that constitutes an actionable hostile work environment. Mazur concedes that he never witnessed anyone throwing his coat on the floor, but only observed the coat on the floor every day at the end of his shift and therefore thought that other employees were putting it on the floor "to pull [his] chain." J.A. at 72. Mazur's unsubstantiated

---

[5]Mazur also alleges that Hamacher called him a "stupid moron plate-head" on one occasion. However, Mazur himself stated that he did not hear from Bell that Hamacher had called him a "plate-head moron" until *after* Wal-Mart terminated him. Therefore, this comment could not have contributed to Mazur experiencing a hostile work environment. *See Langlois v. McDonald's Restaurants of Mich., Inc.*, 385 N.W.2d 778, 782 (Mich. Ct. App. 1986) (holding that plaintiff's work environment was not affected by comments and conduct of which she was not aware).

allegation is insufficient at the summary judgment stage. *See Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). Mazur also concedes that he was called "Tidy Bowl man" "[b]ecause [he] cleaned the bathrooms"—that is, because of the work he did — and that the name was not "related to any condition of [his]." J.A. at 74. As such, those comments were not made "on the basis of" his disability. *Elezovic*, 697 N.W.2d at 869.

Mazur's hostile environment claim is based therefore on the remaining allegations: (a) that he would hear other employees laughing as he left the break room; (b) that on one occasion an employee said, "There he goes,"; and (c) that other employees would ask him more questions than he could answer and then taunt him for an answer.[6]

Even if these incidents of other employees laughing at or teasing Mazur occurred regularly, they would not satisfy the standard for a hostile work environment because they evidence mere personal dislike and constitute mere teasing that does not establish an actionable hostile work environment. *See Hussain,* 126 F. App'x at 268 (stating "simple teasing . . . does not rise to" the requisite level of severity); *see also Corley v. Detroit Bd. of Educ.*, 681 N.W.2d 342, 346 (Mich. 2004) (finding no liability for harassment based on personal dislike). Accordingly, the district court properly granted summary judgment as to Mazur's hostile environment claim.[7]

---

[6] Bell testified in her deposition that "there w[ere] a lot of comments made jokingly or non-jokingly of" Mazur, but did not explain whether all of these comments were disparaging or how many of them Mazur was aware of. J.A. at 414.

[7] Since Mazur has not established that he was subjected to comments on the basis of his disability that substantially interfered with his employment or created an intimidating, hostile, or offensive work environment, we need not decide whether the record evidence created a genuine issue of material fact regarding Wal-Mart's respondeat superior liability.

### III. CONCLUSION

After evaluating the evidence in the record, the applicable legal standards, and the arguments raised by both parties, we find no error in the district court's grant of summary judgment in favor of Wal-Mart.  For these reasons, we **AFFIRM** the judgment of the district court.